UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| VIVEK LAKHUMNA,<br><br>Plaintiff,<br><br>v.<br><br>UINTAH COUNTY et al,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [26] DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 2:23-cv-00387-DBB<br><br>District Judge David Barlow |

Before the court is Defendant Uintah County's (the "County") Motion to Dismiss[1] Plaintiff Vivek Lakhumna's Second Amended Complaint.[2] For the reasons stated below, the court grants the motion.

**BACKGROUND**

This case is about alleged constitutional violations and resulting damages arising from certain policies in force at the Uintah County Jail in 2019.[3] Mr. Lakhumna was incarcerated at the Uintah County Jail (the "Jail") between March 11, 2019, and August 30, 2019.[4] On April 2, 2019, the Jail posted a policy that prohibited all newspapers under the rationale that newspapers constitute a fire hazard.[5] Pursuant to this policy, Mr. Lakhumna was not permitted to receive newspapers from April 2, 2019 through the end of his confinement in Uintah County Jail.[6] On April 3, 2019, Mr. Lakhumna filed his first grievance with the Jail protesting the newspaper

[1] Motion to Dismiss Second Amended Complaint ("MTD"), ECF No. 26, filed Feb. 13, 2026.
[2] Second Am. Compl. ("SAC"), ECF No. 24, filed Jan. 29, 2026.
[3] *See id.*
[4] *Id.* 2.
[5] *Id.* 2, 3.
[6] *Id.*

policy and requesting permission to subscribe to a newspaper.[7] This request was denied.[8] Mr. Lakhumna's second and third grievances were also denied.[9]

Mr. Lakhumna, acting *pro se*, filed this Second Amended Complaint ("SAC"), asserting a § 1983 claim based on the County's alleged violation of his First Amendment rights.[10] He alleges that because he could not read newspapers like the Wall Street Journal, which provide "current information on investing," he "suffered mental and emotional distress, because he was not able to make an [sic] informed and educated decisions regarding his finances."[11]

**STANDARD**

"Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face."[12] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13] "In evaluating a motion to dismiss, the court must take as true [a]ll well-pleaded facts," "view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings."[14] Conclusory statements and legal conclusions are "not entitled to the assumption of truth."[15]

---

[7] *Id*. 3.
[8] *Id*.
[9] *Id*.
[10] *Id*. 4.
[11] *Id*. 3, 4.
[12] *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (citing *United States ex rel. Reed v. KeyPoint Gov't Sols.,* 923 F.3d 729, 764 (10th Cir. 2019)).
[13] *Iqbal*, 556 U.S. at 678.
[14] *McNellis v. Douglas Cnty. Sch. Dist*., 116 F.4th 1122, 1130–31 (10th Cir. 2024) (quoting *Reznik v. inContact, Inc*., 18 F.4th 1257, 1260 (10th Cir. 2021)).
[15] *Iqbal*, 556 U.S. at 679.

Generally, "a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings."[16] "However, notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[17]

## DISCUSSION

The County argues that Mr. Lakhumna's SAC should be dismissed because it is barred by the statute of limitations, fails to plausibly allege a constitutional violation and a *Monell* claim, requests damages that are not compensable under § 1983, and improperly adds individual defendants.[18]

### I. Statute of Limitations

The County first contends that Mr. Lakhumna's claims are barred by the statute of limitations.[19] "In a § 1983 action, state law governs issues regarding the statute of limitations and tolling, although federal law governs the determination of when a § 1983 action accrues."[20] Under federal law, a § 1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action."[21] Once a § 1983 claim accrues, a plaintiff in Utah has

---

[16] A*lvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999)).
[17] *Id.* (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)) (internal quotation marks omitted).
[18] *See* MTD.
[19] *Id*. 5–6.
[20] *Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir. 2010).
[21] *Johnson v. Johnson Cnty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir.1980), cert. denied, 450 U.S. 920 (1981)) (internal quotation marks omitted).

a four-year statute of limitations period in which to file that claim.[22] Mr. Lakhumna became aware of the Jail's newspaper policy that allegedly infringed on his First Amendment rights when the policy was posted on April 2, 2019.[23] Indeed, Mr. Lakhumna submitted his first grievance requesting a newspaper subscription the following day.[24] Accordingly, Mr. Lakhumna's claim accrued on April 2, 2019, and he had until April 2, 2023 to file a complaint.

### A. Prisoner Mailbox Rule

The County contends that Mr. Lakhumna did not file his initial complaint until June 12, 2023, more than four years after his claim accrued.[25] Mr. Lakhumna argues that his claim was deemed filed on June 6, 2023 when he "handed his complaint to the mailroom."[26] The Tenth Circuit has held that under the prisoner mailbox rule, "an inmate who places a federal civil rights complaint in the prison's internal mail system will be treated as having 'filed' that complaint on the date it is given to prison authorities for mailing to the court."[27] The inmate carries the burden of proof on this issue and must establish filing by either:

> (1) alleging and proving that he or she made timely use of the prison's legal mail system if a satisfactory system is available, or (2) if a legal system is not available, then by timely use of the prison's regular mail system in combination with a notarized statement or a declaration under penalty of perjury of the date on which the documents were given to prison authorities and attesting that postage was prepaid.[28]

---

[22] *Parker v. Bourdon*, 800 F. App'x 654, 657 (10th Cir. 2020) (unpublished) ("[W]e held that Utah's two-year statute of limitations, specially enacted to apply to § 1983 claims, was invalid. In so doing, we implicitly endorsed the otherwise applicable four-year statute of limitations."); *Garza v. Burnett*, 2013 UT 66, ¶ 5, 321 P.3d 1104 ("Thus, it is clear under Utah law that a four-year statute of limitations applies to [Plaintiff's] § 1983 claim.").
[23] SAC 2.
[24] *Id*. 3.
[25] Reply in Support of Motion to Dismiss ("Reply") 3, ECF No. 31, filed Apr. 2, 2026.
[26] Opposition to Motion to Dismiss Second Am. Compl. ("Opp'n") 3, ECF No. 28, filed Mar. 19, 2026.
[27] *Price v. Philpot*, 420 F.3d 1158, 1165 (10th Cir. 2005).
[28] *Id.*

Plaintiff has not alleged that he made timely use of the Jail's legal mail system. Mr. Lakhumna only states that he "handed his complaint to the mailroom" on June 6, 2019.[29] He does not include a notarized statement or declaration under penalty of perjury, nor does he aver that postage was prepaid. This is insufficient to plausibly plead a filing on June 6, 2019 via the Prisoner Mailbox Rule. Without the aid of this rule, Mr. Lakhumna's Complaint was filed on June 12, 2023, which is more than four years after April 2, 2019.[30]

Mr. Lakhumna argues his Complaint is still timely because (1) his claim was tolled until he exhausted administrative remedies, and (2) under the repeated violation doctrine, each day the Jail's newspaper policy was in effect resulted in a new violation.[31]

**B. Tolling**

When an action is brought after the relevant statute of limitations expires, it is "subject to dismissal as untimely filed unless tolling applies."[32] A plaintiff whose claims fall outside the statute of limitations on the face of the complaint "has the burden of establishing a factual basis for tolling the statute."[33] Mr. Lakhumna contends that the statute of limitations was paused until June 10, 2019 when he completed the grievance process with the Jail.[34] The Prisoner Litigation Reform Act ("PLRA") requires prisoners to exhaust administrative remedies before seeking judicial relief.[35]

---

[29] Opp'n 3.
[30] *See* Compl., ECF No. 3, filed June 12, 2023.
[31] *Id*. 2–3.
[32] *Braxton v. Zavaras*, 614 F.3d 1156, 1160 (10th Cir. 2010).
[33] *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 (10th Cir. 1980).
[34] Opp'n 2.
[35] 42 U.S.C. § 1997e(a).

Generally, state law determines whether the statute of limitations is tolled unless state law "defeats either § 1983's chief goals of compensation and deterrence or its subsidiary goals of uniformity and federalism."[36] This court is unaware of any Utah statute or caselaw that addresses tolling grounds for mandatory prison-grievance procedures. Because a state's "lack of a tolling provision to allow for the exhaustion of mandatory prison grievances is contrary to § 1983's goals," federal law applies.[37] The Tenth Circuit has found that the statute of limitations is equitably tolled during this exhaustion period for § 1983 claims.[38] The majority of other circuits to address this issue have found similarly.[39] Accordingly, the court concludes that Mr. Lakhumna has plausibly pled that his claim was tolled until he received his final grievance response on June 10, 2019. However, Mr. Lakhumna's claim is still untimely as June 12, 2023 is more than four years after June 10, 2019.

**C. Repeated Violation Doctrine**

Mr. Lakhumna also asserts that "a new violation occurred each day" he "was not allowed to have newspapers" and thus, under the repeated violation doctrine, "each new violation restarts the statute of limitations."[40] The County argues that because this is the first time Mr. Lakhumna asserts this doctrine it is outside the court's leave to amend.[41]

---

[36] *Hardin v. Straub*, 490 U.S. 536, 539 (1989).
[37] *Johnson v. Garrison*, 805 Fed. App'x 589, 594 (10th Cir. 2020) (unpublished).
[38] *See id.* ("We join several other circuits that have applied federal law to equitably toll § 1983 limitations during the PLRA exhaustion period.") (quoting *Battle v. Ledford*, 912 F.3d 708, 719 (4th Cir. 2019) (internal quotation marks omitted).
[39] *See Brown v. Valoff,* 422 F.3d 926, 943 (9th Cir.2005); *Johnson v. Rivera,* 272 F.3d 519, 522 (7th Cir. 2001); *Brown v. Morgan,* 209 F.3d 595, 596 (6th Cir.2000); *Harris v. Hegmann,* 198 F.3d 153, 158-59 (5th Cir. 1999).
[40] Opp'n 4.
[41] Reply 3–4

This court granted Mr. Lakhumna leave to amend his First Amended Complaint but ordered that a second amended complaint "shall not include any claims outside the dates and allegations of transactions and events contained in the Amended Complaint."[42] Mr. Lakhumna's First Amended Complaint alleged not only that the Jail enacted an unconstitutional policy, but that it was enforced throughout Mr. Lakhumna's remaining time at the Jail.[43] But whether the repeated violation doctrine falls outside the scope to amend is ultimately inconsequential because Mr. Lakhumna did not assert it in his Second Amended Complaint. Rather, he included it in his Opposition to Defendant's Motion to Dismiss. Neither is it grounds for dismissal. Plaintiffs are not required to anticipate and rebut affirmative defenses in their complaint.[44] And the repeated violation doctrine is more of an avoidance of a defense than an affirmative claim for relief. It concerns the timeliness of a plaintiff's claims and may excuse claims otherwise barred by the statute of limitations. Thus, Mr. Lakhumna's failure to include it in his Second Amended Complaint does not prevent him from relying on it to avoid the statute of limitations defense asserted by the County.

The County also contends Mr. Lakhumna's invocation of the repeated violation doctrine fails on the merits.[45] The repeated violation doctrine:

> divides what might otherwise represent a single, time-barred cause of action into several separate claims, at least one of which accrues within the limitations period prior to suit. That division, in turn, allows recovery for only that part of the injury the plaintiff suffered during the limitations period; recovery for the part of the injury suffered outside of the limitations period, however, remains unavailable.[46]

---

[42] Order Granting Mot. to Amend Amended Compl., ECF No. 22, entered Jan. 5, 2025.
[43] Am. Compl. 6, ECF No. 11, filed Mar. 11, 2024.
[44] *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).
[45] MTD 4.
[46] *Hamer v. City of Trinidad*, 924 F.3d 1093, 1100 (10th Cir. 2019) (first quoting Kyle Graham, *The Continuing Violations Doctrine*, 43 Gonz. L. Rev. 271, 280 (2008), then quoting *White v. Mercury Marine Div., of Brunswick, Inc.*, 129 F.3d 1428, 1430 (11th Cir. 1997)) (internal quotation marks omitted).

If this doctrine is applicable here, then each day the newspaper policy was in effect may constitute a new violation of the First Amendment.

The County first argues that Mr. Lakhumna “conceded that ‘the continuing violation doctrine was developed in the Title VII employment law context’ and that it ‘does not apply to Plaintiff’s case.’”[47] But, as the County admits, the continuing violation doctrine and the repeated violation doctrine are distinct.[48] Instead of dividing what might be a single violation into a series of separate violations, the continuing violation doctrine “tethers conduct from both inside and outside the limitations period into one single violation that, taken as a whole, satisfies the applicable statute of limitations.”[49]

The County also argues that the repeated violation doctrine is inapplicable here because the posting of the newspaper policy “was a discrete act with continuing effects, which is the type of situation where the Tenth Circuit has held that the limitations period runs from the date of the original act.”[50] The County cites a single unpublished and inapposite case in support of this contention. In *Parkhurst v. Lampert*, the Tenth Circuit held that an inmate’s § 1983 claim of prison overcrowding could not avoid the statute of limitations under the continuing violation doctrine because the inmate “alleged the same ill effect from the day the alleged overcrowding first existed.”[51] But again, Mr. Lakhumna does not assert the continuing violation doctrine, but the repeated violation doctrine.

---

[47] Reply 4 (quoting Plaintiff’s Opposition to Motion to Dismiss Amended Complaint 5, ECF No. 15, filed Sep. 5, 2025).
[48] *Id.*
[49] *Hamer*, 924 F.3d at 1100.
[50] Reply 4 (citing *Parkhurst v. Lampert*, 264 Fed. App’x 748, 749 (10th Cir. 2008)).
[51] 264 Fed. App’x at 749.

The Tenth Circuit has held the repeated violation doctrine applies in the § 1983 context. In *Herrera v. City of Espanola*, appellants brought a § 1983 claim against the city for terminating their "water service based on an allegedly unconstitutional policy."[52] The Tenth Circuit held that, like in *Parkhurst*, the *continuing* violation doctrine was inapplicable because "Appellants suffered harm flowing from [the city's water policy] decision for every day over a three-year period" such that "Appellants' § 1983 claim against the City is not one where the injury sued upon arose only after a series of connected events that together form a single violation of Appellants' constitutional rights."[53] However, the Tenth Circuit did find the *repeated* violation doctrine applicable and held that "Appellants can pursue their § 1983 claims to the limited extent the claims are based on the City's alleged policy, and enforcement thereof, for the three years predating Appellants' commencement of their action."[54] *Herrera* relied extensively on *Hamer v. City of Trinidad* in making this determination. In *Hamer*, the Tenth Circuit held that the city committed "a new violation" of the Americans with Disabilities Act each day it failed to remedy non-compliant sidewalks and curb cuts.[55] As such, the plaintiff was permitted to recover damages for the repeated violations that occurred within the limitations period.[56]

The same conclusion is fitting here. Like the appellants' injuries in *Herrera* that "arose upon the City's termination of water service,"[57] Mr. Lakhumna's alleged injuries arose from the Jail's policy posted on April 2, 2019, which terminated his access to newspapers.[58] Each day the

---

[52] 32 F.4th 980, 999 (10th Cir. 2022).
[53] *Id.*
[54] *Id.*
[55] 924 F.3d at 1105.
[56] *Id.* at 1103.
[57] 32 F.4th at 1001.
[58] SAC 2.

Jail failed to remedy this policy and allow Mr. Lakhumna access to a newspaper subscription "constituted a separate violation that triggered a new limitations period."[59] As such, Mr. Lakhumna can pursue relief for injuries arising within the time period of four years predating the commencement of this action.[60] This limitations period is June 12, 2019 to August 30, 2019, the date Mr. Lakhumna was no longer housed at the Jail.[61] Mr. Lakhumna's claim for injuries stemming from the Jail's policy enforcement prior to this time period are barred by the statute of limitations.

## II. Remaining Issues

The County also argues that Mr. Lakhumna's Second Amended Complaint should be dismissed because it fails to plausibly allege a First Amendment violation and a *Monell* claim.[62]

### A. First Amendment Violation

Prisoners generally have a First Amendment right to receive information while in jail.[63] Many courts, including the Tenth Circuit, have construed this to include the right to access reading materials, including newspapers.[64] Uintah County Jail's newspaper ban encumbers this right. However, because courts owe substantial deference to the decisions of prison administrators, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."[65] The County

[59] *Herrera*, 32 F.4th at 1001.
[60] *See id*. at 999.
[61] SAC 2.
[62] MTD 7–9.
[63] *See Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004) ("Inmates have a First Amendment right to receive information while in prison to the extent the right is not inconsistent with prisoner status or the legitimate penological objectives of the prison.").
[64] *See Thomas v. Leslie*, Nos. 97-3346 & 97-3361, 1999 WL 281416, at *7 (10th Cir. Apr. 21, 1999) (unpublished).
[65] *Turner v. Safley*, 482 U.S. 89 (1987).

asserts that the "Jail's policy prohibiting newspaper subscriptions was expressly justified by fire safety concerns, a legitimate penological interest."[66] Mr. Lakhumna argues that the policy "is not related to a legitimate penological interest, and was forced [sic] in an arbitrary manner."[67]

While fire safety is certainly a legitimate penological interest, the Jail's "absolute ban on newspapers does not constitute a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forth to justify it."[68] Under the policy, inmates were still permitted to have other magazines, toilet paper, writing paper, envelopes, legal paperwork, books, and other flammable objects.[69] These materials could create fire hazards.[70] Thus, for pleading purposes, Mr. Lakhumna has plausibly alleged a First Amendment violation.

### B. Liability of Municipality

In *Monell v. Department of Social Services of City of New York*, the Supreme Court held that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."[71] Thus, to state a claim against a municipal entity, a plaintiff must allege facts showing "(1) the entity executed a policy or custom (2) that caused the plaintiff to suffer deprivation of constitutional or other federal rights."[72]

---

[66] MTD 8. The County also asserts that Mr. Lakhumna's argument is "insufficient under *Turner*." *Id*. "[I]n ruling on a motion to dismiss, a court need only assess, as a general matter, whether a prison regulation is reasonably related to a legitimate penological interest." *Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012) (internal quotation omitted). Therefore, "the four *Turner* factors need not be part of the analysis at the pleading stage." *Id.* At this stage of the litigation, the court lacks a sufficiently developed record to analyze the four factors.
[67] Opp'n 5.
[68] *Thomas*, 1999 WL 281416, at *7.
[69] Opp'n 5.
[70] *See Thomas*, 1999 WL 281416, at *7 (reasoning that a newspaper ban was not reasonably related to fire safety because fires "could as well be caused by the permitted reading materials.").
[71] 436 U.S. 658, 691 (1978).
[72] *Thao v. Grady Cnty. Crim. Just. Auth.*, 159 F.4th 1214, 1227 (10th Cir. 2025) (quoting *Moss v. Kopp*, 559 F.3d 1155, 1168 (10th Cir. 2009)).

Under Tenth Circuit precedent, the following constitute an official policy or custom:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.[73]

Mr. Lakhumna asserts that Jail Commander Irene Brown, who allegedly participating in enacting the newspaper ban, had final policymaking authority for Uintah County Jail.[74] He also asserts that the municipality failed to adequately train its employees with deliberate indifference.[75]

### 1. Final Policymaking Authority

A municipality may be held liable for **"**the decisions of employees with final policymaking authority"[76] and are "equally answerable for actions undertaken by their final policymakers, whether or not those actions conform to their own preexisting rules."[77] Mr. Lakhumna invokes *Whitson v. Board of County Commissioners of County of Sedgwick* to contend that Jail Commander Brown is the final policymaker with regards to the operation of Uintah County Jail.[78] In *Whitson*, the Tenth Circuit held that the county sheriff "was the final policymaker for the municipal defendants with respect to the care of county prisoners."[79] The Tenth Circuit cited a Colorado statute which designated the sheriff with "charge and custody of

---

[73] *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1184 (10th Cir. 2020).
[74] SAC 2; Opp'n 6.
[75] Opp'n 6.
[76] *Crowson*, 983 F.3d at 1184.
[77] *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1283 (10th Cir. 2007).
[78] Opp'n 6 (citing *Whitson v. Bd. of Cnty. Comm'rs of Cnty. of Sedgwick*, 106 F.4th 1063 (10th Cir. 2024).
[79] 106 F.4th at 1068.

the jails of the county, and of the prisoners in the jails, and shall supervise them himself or herself or through a deputy or jailer."[80]

Contrary to Mr. Lakhumna's assertion that the jail commander has final policymaking authority over Uintah County Jail, a Utah statute similarly provides authority to the county sheriff to "take charge of and keep the county jail and prisoners in the county jail."[81] Other courts in this district have also found that the sheriff is the final policymaker for jail policies and procedures.[82] Mr. Lakhumna has failed to demonstrate why Jail Commander Brown, and not the county sheriff, is the final policymaker for Uintah County Jail. Nor has Mr. Lakhumna plausibly alleged that the county sheriff ratified the decisions of the jail commander. Thus, Mr. Lakhumna has failed to plausibly allege that the newspaper ban was the decision of a municipal employee with final policymaking authority.

**2. Failure to Train**

Mr. Lakhumna also asserts municipal liability on the basis of failure to train.[83] The Supreme Court has held that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."[84] To state a claim based on failure to train, the plaintiff must plausibly allege that the municipality acted with deliberate indifference.[85]

---

[80] *Id.* (quoting Colo. Rev. Stat. Ann. § 30-10-511).
[81] Utah Code § 17-72-301(1)(g).
[82] *See Snow v. Board of County Com'rs of the County of McCain*, No. CIV–14–911–HE, 2014 WL 7335319, at *2 (W.D. Okla. Dec. 19, 2014) (unpublished) ("Under Oklahoma law, the county sheriff is the final policymaker as to the county jail. So if the sheriff has adopted a policy or knowingly acquiesced in a custom which becomes the moving force behind a constitutional violation, that is enough to establish county liability."); *Estate of Hammers v. Douglas County, Kansas Bd. of Com'rs*, 303 F. Supp.3d 1134, 1146–47 (D. Kan. 2018) (explaining that the sheriff is the final policymaker for the jail under Kansas law, which states "[t]he sheriff shall have the charge and custody of the jail of his county, and all the prisoners in the same, and shall keep such jail himself, or by his deputy or jailer, for whose acts he and his sureties shall be liable.") (quoting Kan. Stat. Ann. § 19-811).
[83] Opp'n 6.
[84] *Connick v. Thompson*, 563 U.S. 51, 61 (2011).
[85] *See Bryson v. City of Oklahoma City*, 627 F.3d 784, 789 (10th Cir. 2010).

"The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."[86] Generally, notice is established by a pattern of tortious conduct.[87] However, Mr. Lakhumna does not allege that Uintah County was on notice because of a pattern of constitutional violations but that "a deliberate indifference claim may be based on a single incident."[88]

Notice can be established by a single incident "if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction."[89] The Tenth Circuit has held that when a failure to train claim is based on a single incident, the plaintiff must allege, "(i) the municipality's policymakers know to a moral certainty that their employees will confront a given situation; (ii) the situation presents the employee with a difficult choice of the sort that training or supervision will make less difficult; and (iii) the wrong choice will frequently cause the deprivation of a citizen's constitutional rights."[90] Mr. Lakhumna has not explained why or even alleged that Uintah County's policymakers knew to a "moral certainty" that their employees would confront the given situation. Nor has he alleged that this situation presents a difficult choice that could be aided by training, and that a municipal employee's wrong choice will frequently cause deprivation of constitutional rights. Mr. Lakhumna only observes that a deliberate indifference claim based on a single incident must be of the nature

---

[86] *Id.*
[87] *Id.* (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)).
[88] Opp'n 6.
[89] *Bryson*, 627 F.3d at 789 (quoting *Barney*, 143 F.3d at 1308).
[90] *Valdez v. Macdonald*, 66 F.4th 796, 817 (10th Cir. 2023) (quoting *Lance v. Morris*, 985 F.3d 787, 802 (10th Cir. 2021)).

where the need for training is obvious.[91] He does not explain how his claim meets that standard. Therefore, Mr. Lakhumna has failed to plausibly allege that the newspaper policy was due to Uintah County's deliberate indifference to their failure to adequately train or supervise employees.

Because Mr. Lakhumna has failed to state a claim against a municipal entity, the Second Amended Complaint will be dismissed. [92] And because the Second Amended Complaint must be dismissed, the court does not address Uintah County's further argument that Mr. Lakhumna's damages claims are not cognizable. Finally, the court cannot discern whether further amendment of the complaint would be futile if Plaintiff were to be given one final opportunity to attempt to cure the deficiencies in the Second Amended Complaint. Therefore, the dismissal is without prejudice.

**ORDER**

Accordingly, Defendant's Motion to Dismiss is GRANTED without prejudice.[93]

---

[91] Opp'n 6.
[92] Mr. Lakhumna also asserts his § 1983 claim against Jail Commander Irene Brown and Correction Officer Cox in their official capacities. SAC 1–2. However, just as this court did for Mr. Lakhumna's First Amended Complaint, the court construes Mr. Lakhumna's Second Amended Complaint as bringing its claim against Uintah County only. *See Coates v. Reigenborn*, Nos. 22-1339 & 22-1434, 2023 WL 6810961, at *3 (10th Cir. Oct. 16, 2023) (unpublished) ("The Supreme Court has instructed that official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. By contrast, individual-capacity suits seek to impose individual liability upon a government officer for actions taken under color of state law.") (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (cleaned up)).
[93] ECF No. 26.

Signed November 12, 2026.

BY THE COURT

David Barlow
United States District Judge